### DAVID LOUDENBACK v. J. E. LOWRY AND R. M. LOWRY.

**1** IMPROPERLY SUSTAINING A CHALLENGE OF JUROR IS NOT ERROR.

A judgment will not be reversed because a challenge for cause of a regular juror was improperly sustained. There being no question as to the qualification of the juror who filled his place, the parties have had a trial by a competent jury.

**2.** GIVING WRONG PARTY RIGHT TO OPEN AND CLOSE NOT ERROR.

Nor because the right to open and close the case was given to the party who would have prevailed if no evidence had been offered, unless the record shows that there were no special reasons for directing that order of trial.

**3.** EVIDENCE MUST SHOW KNOWLEDGE OF CONSIDERATION NOT LATER THAN DATE OF PURCHASE.

Upon the trial of issues touching the good faith of the holder of a negotiable note invalid as between the parties, evidence of his knowledge of the consideration, to be competent, must tend to show knowledge at the time of his purchase, not at a later date, and if there is no evidence that he had notice at the time of the purchase of the note, a verdict for the defendant must be set aside.

**4.** ADMISSIONS AT A DATE LATER THAN PURCHASE NOT COMPETENT.

Where the answer sets up that the note sued upon was a red line wheat note, and that plaintiff took it with notice, which is denied, evidence showing admissions, at a date later than of the purchase, that he had bought red line wheat notes, is not evidence of notice at the time of purchase.

ERROR to the Court of Common Pleas of Clark county.

SHAUCK, J.

The plaintiff in error brought suit in the court of common pleas against the defendants in error upon a promissory note for $750.00, executed by them to one E. S. Clark or bearer, dated June 17, 1885, and payable October 1, 1886, alleging that on the 16th day of July, 1885, it was indorsed and delivered to him by the payee, and he was the holder and owner thereof.

The answer admits the execution of the note, but alleges that it was given for "Red Line" wheat, and that familiar scheme is set out in the answer. The defendants further say "that plaintiff is not the holder of the note for a valuable consideration, and did not take it in the usual course of trade without knowledge of the consideration or want of consideration for which the same was given. * * * The said plaintiff purchased said note for an inadequate consideration, and with knowledge that said Clark was engaged in taking notes from farmers under the circumstances set forth, and that at that time he had no

other occupation, and that the plaintiff knew that said note was made on the transaction stated, and on no other consideration."

The plaintiff, by reply, denies all the allegations of the answer, and avers that "he purchased the note in the usual course of trade before maturity, in good faith, without any knowledge or suspicion of any of the facts averred in said answer, or of any infirmity in said note, and paid therefor the full value of the same as a good and valid note."

It is not asserted on behalf of the plaintiff, that this note was valid as between the original parties; nor, on the other hand, is it denied that a recovery may be had thereon by a *bona fide* holder. Whether the plaintiff is such holder or not, is the general question presented by the record.

The first error complained of, is in improperly sustaining a challenge for cause to a regular juror. We do not deem it necessary to determine whether this challenge was properly sustained, or not. The plaintiff's right was to have his cause submitted to a competent jury. It was not material that this particular juror should sit, and his place was filled by one whose legal qualifications have not been questioned.

A further complaint is that while at the proper time the plaintiff claimed the right to open and close the case, his claim was not allowed by the trial judge, but that right was given to the defendants. Section 5190, which prescribes the mode of conducting trials, provides that "the party who would be defeated if no evidence were offered on either side, must first produce his evidence;" and this order is to be observed in all cases, "unless the court, for special reasons, otherwise direct." If, under the general rule prescribed by this section, the plaintiff was entitled to open and close the case, we must presume in aid of the judgment, that there were special reasons which justified the court in directing that a different order should be pursued. That presumption is not inconsistent with the record. Dille v. Lovell, 37 O. S., 415.

Upon the trial of the issue stated, the defendants were permitted to prove that the plaintiff was a regular subscriber to the Champaign County Democrat, and thereupon, against plaintiff's objection, to introduce a copy of the issue of that paper of December 24, 1885, containing a communication exposing the "Bohemian oats" scheme, and portraying the consequences to which it would lead, and suggesting incidentally that to these must be added the consequences to result from buying "Red Line" wheat at fifteen dollars a bushel.

This was upon cross-examination of the plaintiff, who, in his direct examination, had testified that he had no knowledge of these schemes until some time after he purchased the note sued on, when he saw newspaper items concerning them. The substantial testimony of the plaintiff in his own behalf, was, that at the time of the purchase of this note, he had no knowledge of these fraudulent schemes. The form in which this fact was stated, did not justify the introduction of the article in question. It was undisputed that the plaintiff had purchased the note in July, 1885, and no evidence to show notice given him in the following December, could be relevant, even if its competency in other respects were admitted.

Indeed, this evidence was so plainly incompetent, that consideration is due to the suggestion that the jury may have disregarded it, and that the error in its admission was not prejudicial. "If the whole testimony in such case be placed on the record, and it appear to the reviewing court that the rejection of the incompetent testimony could not have changed the result of the trial, the error can not be considered as prejudicial to the party excepting." Thayer v. Luce, 22 O. S., 62.

The evidence in this case is all before us, and it is insisted that the motion for a new trial ought to have been sustained upon the ground that the verdict was against the manifest weight of the evidence. The plaintiff's good faith in making the purchase, is supported as strongly as possible by his own testimony.

It is supported by the fact that before concluding the purchase of this and other notes offered at the same time, he came to Springfield from his home in Champaign county, and made inquiry at the banks where the notes were payable, concerning the solvency of the several makers, thus putting himself in the way of information touching the consideration for which they were given.

Opposed to the good faith of the plaintiff, are the circumstances that he bought the note from a stranger, and that he paid but eighty-seven and one half per cent. of the face of the note, and the testimony of one Leonhard, who in a deposition testifies, that in the latter part of December, 1885, the plaintiff told him he had been buying Bohemian oats notes down in Clark county,' and that on the 1st of December, 1887, at a trial before a justice of the peace, in which they were adverse parties, the plaintiff told him they were not. Bohemian oats notes, but "Red Line" wheat notes; also the deposition of one Crabill, who testifies that about the first of March, 1886, the plaintiff told him he had been asked to buy some notes, but that if they were Bohemian oats notes he would not buy them, as he already had about four thousand dollars in such notes. These depositions were admitted without objection. Passing obvious questions as to the credibility of some of these statements, it is manifest that none of them show that the plaintiff, at the time of his purchase, had knowledge of any infirmity in this note, even if it be assumed that it was one of the notes of which he spoke. Indeed the conversation of December, 1887, was after the answer in this case had informed him of the consideration for which it had been executed. The depositions do not show any direct or implied admission by the plaintiff, that at the time of the purchase of the note he had knowledge of its consideration.

The verdict was against the manifest weight of the evidence, and it may have resulted from the admission of the incompetent evidence.

The judgment will be reversed for error in the admission of evidence and in overruling the motion for a new trial, and the cause will be remanded to the court of common pleas for further proceedings.

Geo. Arthur and Bowman & Bowman, for plaintiff.
Keifer & Keifer, *contra.*

---

## DESCENTS. 69

[Hamilton Circuit Court, April Term, 1889.]

Swing, Cox and Smith, JJ.

## * H. LOEWENSTEIN v. LUCY E. TOWNSEND ET AL.

Descent of Purchase Money From Sale of a Perpetual Lease.

A lessee of a perpetual lease, with the privilege of purchasing at any time, sought to exercise the option after the death of the lessor. The heirs and also the administrator of the lessor and of her husband, claimed the fund. The lessee filed a bill of interpleader making all of them parties. Held, that in such a case the heirs are entitled to the purchase-money, unless it be alleged and proved, that it is necessary to pay debts or legacies of the deceased lessor.

Cox, J.

The questions in this case arise on distribution of the purchase-money of real estate held by perpetual lease, with the privilege of purchase at any time by the lessee. Hannah

---

* This judgment was affirmed by the supreme court. See opinion, 50 O. S., 346.

Louisa Wade in 1848 leased a lot in Cincinnati to one Burnet for ninety-nine years, renewable forever, with the privilege of purchase at any time for $800. Burnet assigned his lease to Loewenstein. Miss Wade in 1854 married Thomas E. Townsend, and with him resided in the state of New York until her .death in 1861. She left surviving her a husband and one son, Edward W. Townsend. The son died unmarried and intestate in New York in 1872, and the father died in New York in 1884. On the 27th of April, 1886, Loewenstein filed his petition in the court of common pleas of Hamilton county, Ohio, setting up that he desired to avail himself of the option to purchase, as provided in the lease, and to obtain a deed, but that he was unable to decide to whom the purchase-money should be paid, as claims are made for it by the heirs of Mrs. Townsend, by her administrator, as also by the administrator of her deceased husband. He asks to bring the money into court and have these respective claimants interplead.

It is claimed by counsel for the administrator of Mr. and Mrs. Townsend, and this seems to be the weight of authority of cases decided by the English courts, · that where a lessee with the privilege of purchase, or any other purchaser with an option, duly declares his option after the death of the lessor or vendor, who is the owner of the fee, the realty is thereby converted retrospectively as between those claiming under the lessor or vendor, or under his will; that is, as between the heir or devisee on one side, and the legatees or next of kin on the other, the proceeds will go to his personal representatives, though the heir or devisee will be entitled to the rent up to the time when the option is declared. 3 Pomeroy Equity, sec. 1163; Laws v. Bennett, 1 Cox, 167; .Townley v. Bedwell, 14 Ves., Jr., 591.

The first case reported is that of Laws v. Bennett, 1 Cox, 167, and the next Townley v. Bedwell, 14 Ves., Jr., 591. In the latter case Lord Elden cited from his notes the case of Laws v. Bennett, *supra*, and remarked, "That case was very much argued, and I do not mean to say that a great deal may not be urged against it, but when there is a decision precisely in point, it is better to follow it." Mr. Pomeroy, in a note to sec. 1163, says this rule is plainly one which may operate in many cases very harshly, since the option might not be declared until possibly years after the vendor's death; and its correctness on principle has been doubled by the ablest judges. It has recently been decided that it shall not be extended; that its. operation is confined to the question of conversion as between the heir or devisee of the vendor and his personal representatives, and that it does not apply as between the vendor and purchaser themselves; as between these two parties the conversion does not and cannot take place until the purchaser declares his option." Edwards v. West, L. R., 7 Ch. Div., 858, etc.

The latter principle was. recognized in this state in Gilbert v. Port, 28 O. S., 276, and following.

In the case of Buchwalter v. Klein, 5 Dec. R., 55 (s. c. 2 Am. Law Rec., 347), the superior court of Cincinnati adopted the English rule, and held that "if the option to pur- chase is not exercised until after the death of the vendor, the legal title descends to the heir, but the latter may be compelled to perform his ancestor's contract specifically, and the personal representative of the ancestor will be entitled to the purchase-money. But in all these cases upon which the rule was built, there was ·none of them the case of a per- petual lease with a perpetual right to purchase.

The case of Laws v. Bennett, 1 Cox, 167, ·was that. of a lease for seven years from October 2, 1758, with privilege of purchase after the 29th of September, 1761, and before the 29th of September, 1765.

In Townley v. Bedwell, 14 Ves., Jr., the lease was for thirty-three years, with privi- lege of purchase—six years. In Buchwalter v. Klein, *supra*, the lease and option were only for ten years.

The question as to whether this principle applies to perpetual leases with perpetual right to purchase, has not been decided by our supreme court, nor are the cases cited in point on that question, and we are not inclined to extend it to such cases as the present. Here the lease is a perpetual one with option of purchasing at any time on payment to the lessor or her heirs or assigns of the purchase-money. And although on her death the estate she held may, in contemplation of law, be, regarded as having by that death been assigned to her administrator, yet there is no reason· why after the lapse of sixteen years from her death, the purchase-money should go to the administrator, without some strong reason that it is necessary to pay debts or legacies. If it would not be necessary for such pur- pose, it would' be the duty of the administrator to pay it over to the heir; and now when all are parties, in this case, that course ought to be adopted which would prevent circuity of actions, and give the fund to the party who would ultimately be entitled to it. If the fund may absolutely be paid to the administrator after sixteen years, there is no reason why it may not be in two hundred or more years, when it would be impossible to ascer- tain who might be the distributees.

There are other reasons which induce us to doubt the propriety of such a rule. In the first place, it would give to a lessee the right, by exercising the option of purchase, to onvert that which for many years, it may be, has been real estate, and enjoyed by the

Bates & Kaufman, for heirs.

Lincoln, Stephens & Lincoln, for administrators.